**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**JOSEPH VASTOLA**,

           Plaintiff,

           v.

**STERLING, INC. d/b/a SIGNET JEWELERS,** *et al.*,

           Defendants.

Civil Action No. 21-14089 (ZNQ) (LHG)

**OPINION**

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Remand by Plaintiff Joseph Vastola. (ECF No. 8.) Plaintiff's Motion comes in response to Defendant Sterling Jewelers Inc. ("Sterling") filing of a Notice of Removal from the Superior Court of NJ, Somerset County – Law Division. (ECF No. 1.) The Court has carefully considered the parties' submissions and decided the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion to Remand.

1

I.     **BACKGROUND AND PROCEDURAL HISTORY**

This action arises out of alleged violations of the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 et seq., ("NJLAD"). ("Compl.," ECF No. 1–2., ¶ 21.) On June 18, 2021, Plaintiff, a resident of New Jersey, filed the instant action in state court against five defendants: Sterling Jewelers, Inc.[1] ("Sterling"), a Delaware corporation with its headquarters and principal place of business in Ohio; Ariel Gore ("Gore"), a resident of New Jersey, in her individual capacity and in her capacity as a supervisor for Sterling; and three groups of fictitious names describing presently unidentified individuals and business entities (collectively, the "Defendants"). (*Id*. ¶¶ 1–5; "Defs.' Notice of Removal," ECF No. 1, ¶ 1.)

Plaintiff began employment with Sterling in or around November 2017. (Compl. ¶ 6.) While employed at Sterling, Plaintiff worked at a store affiliated with Sterling in New Jersey as a Luxury Fashion and Timepiece Manager. (*Id*. ¶¶ 6–7.) After providing notice and medical documentation to Sterling for leave under the Family and Medical Leave Act, Plaintiff took about a month of medical leave, during which he attended an outpatient facility for addiction treatment. (*Id*. ¶¶ 9–10.) Upon his return to work, Plaintiff alleges that Sterling's upper management made comments that led him to believe that information about his disability were disclosed to employees outside of the HR department. (*Id*. ¶¶ 11–12.) Plaintiff was also subject to his first write-up shortly after returning from medical leave. (*Id*. ¶ 13.)

Not long after, Plaintiff and the rest of the sales employees were furloughed around March 2020, shortly after the COVID-19 pandemic began. (*Id*. ¶ 14.) Sterling began bringing back employees from furlough around May 2020, but Plaintiff was not among those brought back. (*Id*.

---

[1] Defendant Sterling was incorrectly named in the Complaint as Sterling, Inc. d/b/a Signet Jewelers. The Court will refer to the Defendant by its proper business name.

¶ 15.) On September 14, 2020, Plaintiff received a letter from Sterling providing him the option of returning to work in a different position or at a different location. (*Id*. ¶ 17.) Shortly after, however, Plaintiff received a phone call from Defendant Gore, his District Manager, who informed him that his employment with "Sterling" had been terminated. (*Id*. ¶ 16.)

The Complaint asserts three counts under the NJLAD: (1) disability discrimination/perceived disability discrimination/failure to accommodate against all Defendants, (2) unlawful retaliation against all Defendants, (3) aiding and abetting liability against all Defendants. (Compl. ¶¶ 20–36). Defendants thereafter timely removed the case under 28 U.S.C. § 1441 to this Court, arguing fraudulent joinder of Defendant Gore and invoking diversity jurisdiction. (Defs' Notice of Removal ¶¶ 10, 14–15.) After the Superior Court of New Jersey, Somerset County, granted Defendants' motion to remove to this Court, Plaintiff filed a Motion to Remand (the "Motion to Remand," ECF No. 8.) and a brief supporting the Motion to Remand (the "Motion to Remand Br.", ECF No. 8-1) and requesting attorney's fees and costs. Defendants filed a brief opposing the Motion to Remand ("Opp'n Br.," ECF No. 11) and Plaintiff replied ("Reply Br.," ECF No. 12).

## II.  LEGAL STANDARD

### A. Motion to Remand

Federal district courts have original diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and the action is between citizens of different states. 28 U.S.C. § 1332(a). Party joinder is permissible where the claim "aris[es] out of the same transaction, occurrence, or series of occurrences," and involves "any question of law or fact common to all defendants." Fed. R. Civ. P. 20(a). The right to remove a civil action from state

court is retained by a defendant if the case could have been originally brought in federal court, such as through diversity jurisdiction. 28 U.S.C. § 1441(b).

Section 1447(c) states that a case removed from state court "shall be remanded . . . [i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). When determining if an action should be remanded, a district court must focus on the operative complaint at the time the petition for removal was filed. *Group Hospitalization & Medical Services v. Merck-Medco Managed Care, LLP.*, 295 F. Supp. 2d 457, 461–62 (D.N.J. 2003). If a complaint raises no question of federal law, a district court may exercise subject matter jurisdiction only if the amount in controversy exceeds the value of $75,000 and complete diversity exists among the adverse parties. 28 U.S.C. § 1332(a); *Lincoln Property Co. v. Roche*, 546 U.S. 81, 83–84 (2005). As the party removing the case, the defendant bears the "burden to prove that federal court jurisdiction is proper at all stages of the litigation." *Stephens v. Gentilello*, 853 F. Supp. 2d 462, 465 (D.N.J. 2012). Any contested issues of fact and uncertainties of law must be resolved in favor of the plaintiff. *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), *cert. denied*, 498 U.S. 1085 (1991). Further, the court is tasked with construing removal statutes strictly so as to "resolve all doubts in favor of remand." *Stephens*, 853 F. Supp. 2d at 465 (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985)).

### B. Fraudulent Joinder

The doctrine of fraudulent joinder provides an exception to the requirement that removal be established entirely upon complete diversity. *In re Briscoe*, 448 F.3d 201, 215–16 (3d Cir. 2006). If there is no separate federal question jurisdiction, the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined. *Batoff v. State Farm Ins. Co.,* 977 F.2d 848, 851 (3d Cir. 1992). However, since the removing party imposes

jurisdiction upon a federal court, the removing party incurs a "heavy burden" of persuasion to prove that a party has been joined fraudulently. *Id.* (quoting *Steel Valley Authority v. Union Switch & Signal Div.*, 809 F.2d 1006, 1012 n.6 (3d Cir. 1987), *cert. dismissed*, 484 U.S. 1021 (1988)); *see also Boyer*, 913 F.2d at 111. As such, joinder may be found to be fraudulent "when there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against defendants or seek a joint judgment." *Batoff,* 977 F.2d at 851 (quoting *Boyer*, 913 F.2d at 111). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Id.*

### III.   DISCUSSION

#### A.  Subject Matter Jurisdiction

Plaintiff argues removal to this court was improper and, as a result, remand is required. (Motion to Remand Br. at 1.) Specifically, Plaintiff asserts that this action was non-removable when initially filed due to Defendants' lack of complete diversity of citizenship. (*Id.* at 1–2.) Neither party argues that the Court has federal question jurisdiction; moreover, the Court cannot find federal question jurisdiction because the claims arise under New Jersey state law. (Compl. ¶ 21.) Given that Plaintiff and Gore are citizens of the State of New Jersey (Compl. ¶ 1, 3.), the Complaint does not plead complete diversity on its face. However, Defendants argue that Gore was fraudulently joined to defeat diversity jurisdiction and thus Gore's citizenship should be ignored. (Defs' Notice of Removal ¶ 14 – 15.)

### B. Fraudulent Joinder Analysis

Gore, while named in the initial complaint, was not properly served and joined until July 24th, a day after removal. (Opp'n Br. at 1.) The Court finds that service on Gore was not dilatory as it was within the ninety-day period after the filing of the complaint pursuant to Fed. R. Civ. P. 4. Further, courts in this district have not found fraudulent joinder in cases with longer delays. *See Mersmann v. Cont'l Airlines*, 335 F. Supp. 2d 544, 556 (D.N.J. 2004). In *Mersmann*, the Court allowed joinder after an unexplained delay of "approximately two months" after removal because there was present "colorable ground" for asserting claims against the non-diverse defendants under NJLAD aiding and abetting liability. *Id.* Just as in *Mersmann*, the Court concludes that Gore should not be dismissed solely on the grounds that Plaintiff was dilatory in their service of process given that Plaintiff was timely in serving Gore under Rule 4. *Id.*

Defendants argue that Plaintiff's insufficient allegations with respect to Gore shows fraudulent joinder. (Opp'n Br. at 3–7.) In particular, the Defendants contend that Plaintiff's allegations are conclusory and more specific factual allegations are necessary to allege a colorable claim against Gore under the NJLAD. (*See id.*) Conversely, Plaintiff argues the complaint meets the liberal standard for a fraudulent joinder analysis and sets out a colorable claim against Gore as an aider and abettor. (Motion to Remand at 2–3, Reply Br. at 6); *Batoff*, 977 F.2d at 851.

The Defendants contend that there is only one present non-conclusory factual allegation against Gore within Plaintiff's complaint: she called Plaintiff to inform him that his "employment with the Company was terminated, as the Company did not have enough hours for him." (Compl. ¶ 16.) While the allegations within the complaint may be formulaic and sparse, when undertaking a fraudulent joinder analysis, a district court, must not, "in the guise of deciding whether the joinder was fraudulent" step beyond the jurisdictional inquiry into one of merits. *Boyer,* 913 F.2d at 112.

6

As such, "even a possibility… that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Batoff*, 977 F.2d at 851.  The "heavy burden" of showing the impossibility of a claim is shouldered solely by the defendant.  *In re Briscoe*, 448 F.3d at 223.[2]

The Defendants rely, in part, on *Moore v. Johnson & Johnson*, 907 F. Supp. 2d 646. (E.D. Pa. 2012)[3] as support.  (Opp'n Br. at 5–6.)  However, the Court finds that *Moore* is distinguishable from the present case.  *Moore* does not arise under the NJLAD but rather a "participation theory" under a Pennsylvania law for torts committed by corporations in which a corporate officer "specifically direct[s] the particular act to be done or participate [s], or cooperate[s] therein." *Moore*, 907 F. Supp. 2d at 663 (quoting *Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 90 (1983)). This theory specifically states "[T]he mere averment that a corporate officer should have known the consequences of the liability-creating corporate act is . . . insufficient to impose liability." *Id*. This is dissimilar from the NJLAD where a supervisory employee may be liable as an "aider and abettor for active harassment or knowing and willful inaction, because in either case the supervisor violates his or her duty as a supervisor to prevent and halt harassment." *Hurley v. Atl. City Police Dep't.*, 174 F.3d 95, 129 (3d Cir. 1999).

As presently alleged, it is not an impossibility that Gore is liable as an aider and abettor under the NJLAD.  Plaintiff has averred that Gore was Plaintiff's supervisor and either participated or had knowledge of the alleged NJLAD violations. (Compl. ¶ 16.)  Although sparse, the factual

---

[2] This burden may be met when demonstrating, for example, that joinder of a non-diverse defendant was fraudulent in the instance that the claims are time-barred by the governing statute of limitations.  *See In re Briscoe*, 448 F.3d at 223.  Such a standard calls for only a "limited piercing of the allegations to discover fraudulent joinder." , 913 F.2d at 112.

[3] Defendants also cite *Sussman v. Cap. One, N.A.*, No. 13-6483, 2015 WL 164095 at *6 (D.N.J. Jan. 13, 2015), arguing that the court applied a heightened standard for assessing plaintiff's allegations. This case is also distinguishable as the plaintiff did not allege that the fraudulently joined defendants were plaintiff's supervisors.  Rather, in *Sussman*, plaintiff only alleged this later through a motion to reconsider; the allegation was found to be impermissible for consideration by the court.

allegations made towards Gore do not amount to the same statutorily prescribed impossibility present in *Moore*.[4]  907 F. Supp. 2d at 664.

### C. Aider and Abettor Liability

Liability under the NJLAD extends to an action or inaction that "aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so." N.J. Stat. Ann. § 10:5–12 (West).  For a defendant supervisory employee to be liable for aiding and abetting,

> "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal and tortious activity at the time he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation."

*Tarr v. Ciasulli*, 853 A.2d 921, 929 (2004).

The Defendants further argue that under the NJLAD, aiding and abetting liability is impossible for Gore since as an employee she cannot be held liable for her own acts. (Opp'n Br. at 3–6.)  Defendants cite *Cicchetti v. Morris Cnty. Sheriff's Off.* 947 A.2d 626, 628–32 (2008), in which Morris County sheriff's officer Cicchetti alleged that after he tested positive for hepatitis C he was subjected to unlawful harassment after the results were revealed to his co-workers.  The court dismissed Cicchetti's aiding and abetting claims since the actions and failures to act of both the Sheriff and Undersheriff were "well short of the 'active and purposeful conduct'" needed to support aiding and abetting liability. *Id.* at 646.

---

[4] In *Moore*, the court found that joinder was fraudulent for the corporate defendants because their alleged failure to set higher standards represented inaction that they "should have known" would cause injuries to the public, and since the defendants were not alleged to have "specifically directed the particular act" that caused injury. *Moore*, 907 F. Supp. 2d at 663. As such, the alleged actions in the complaint were not colorable under that specific Pennsylvania law claim. *Id.* at 664.

However, Defendant mistakes the fraudulent joinder analysis for that of a motion to dismiss or summary judgment.

The inquiry into the validity of a complaint triggered by a motion to dismiss under Rule 12(b)(6) is more searching than that permissible when a party makes a claim of fraudulent joinder. Therefore, it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted. *Batoff*, 977 F.2d at 852. While Plaintiff's complaint does not necessarily prove liability for each of the elements of aiding and abetting, the court is not making a determination on the merits of the claims. Rather, "the benchmark here is considerably lower than that triggered by Rule 12(b)(6)." *McDermott v. CareAllies, Inc.*, 503 F. Supp. 3d 225, 237 (D.N.J. 2020).

Plaintiff has satisfied the relevant standard for disability discrimination in that he avers within the complaint that it was his termination, and the actions that led up to it, that constituted discrimination by Defendants, and states that Gore carried out the termination. (Compl. ¶¶ 3, 16.) Plaintiff alleges that Gore was his supervisor thus implying that he was either terminated on Gore's directive or that she was at least in part responsible for discussing with company decision-makers regarding Plaintiff's disability and eventual termination. (Compl. ¶¶ 3, 16.) While Defendants rightly point out that Gore alone cannot be personally held liable for count one, these allegations show a possibility that Gore aided and abetted the violations under count three. (Compl. ¶¶ 32, 34.); *see Hurley*, 174 F.3d at 129.

Plaintiff's second count is also not "wholly insubstantial and frivolous," *In re Briscoe*, 448 F.3d at 218. "To state a claim for retaliation under the NJLAD, a plaintiff must show that: (1) she was in a protected class; (2) she was engaged in protected activity known to the employer; (3) she was thereafter subjected to an adverse employment consequence; and (4) there is a causal link

9

between the protected activity and the adverse employment consequence. *McDermott*, 503 F. Supp. 3d at 237.

Plaintiff alleges that he belonged to a protected class and engaged in a protected activity in that he has a disability and took a medical leave. (Compl. ¶¶ 21–25.) Plaintiff also alleges that he suffered an adverse action in being terminated. (*Id.*) Plaintiff further alleges a causal link between the protected activity and Plaintiff's termination which, while sparse, suffices: Plaintiff's first write up and eventual termination occurring briefly after return from leave and after being assured prior through a letter that his job was conditionally safe, sufficiently suggests retaliatory circumstances necessary to support his claim under this standard. (*Id*. ¶¶ 13, 16–18); *see McDermott*, 503 F. Supp. 3d at 238–39. These allegations show a possibility that Gore, as a supervisor, aided and abetted this claim.

As pleaded, it is possible that Gore, as a supervisor, aided and abetted in the alleged discriminatory conduct under the NJLAD. Thus, Defendants have not shown that the allegations against Gore are not colorable, and therefore, joinder is not fraudulent. *See in re Briscoe*, 448 F.3d at 218.

### D. Costs and Attorney's Fees

Plaintiff argues that attorney fees should be awarded on remand and that a presumption exists that favors the award. (Motion to Remand at 22–24.) The Supreme Court has explained that under Section 1447(c) the award of attorney fees resulting from a remand is discretionary upon the District Court's judgment. *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 136 (2005). In *Martin*, the Court explained that "the statutory language and context strike us as more evenly balanced between a pro-award and anti-award." *Id.* at 138. This is not to say that such a decision is made on a whim. *Id*. A district court is to be guided by the principals of preservation of judicial

resources as the process of removal may "imposes additional costs on both parties, and wastes judicial resources." *Id*. at 140.  As such, a district court undertakes a reasonableness analysis in which, "absent unusual circumstances, courts may award attorney's fees… only where the removing party lacked an objectively reasonable basis for seeking removal." *Id*. at 141.

Typically, courts award attorneys' fees where it is clear that the complaint does not state a claim removable to federal court or where minimal research would have revealed the impropriety of removal.  *Little League Baseball, Inc. v. Welsh Publ'g Group, Inc.*, 874 F.Supp. 648, 656 (M.D.Pa.1995); *See also Ingemi v. Pelino & Lentz*, 866 F.Supp. 156, 163 (D.N.J.1994).  The court will exercise its discretion to deny Plaintiff's request for counsel fees. Defendants set out an objectively reasonable basis for removal upon their belief that Gore was fraudulently joined despite the Court's disagreement with its position.  (Defs' Notice of Removal ¶¶ 15–16.)  Defendants' briefs suggests that sufficient research was conducted to indicate they had a reasonable basis behind their rationale for removal. (*Id*.; Opp'n Br at 2–6.)  As such, Plaintiff's request for attorney's fees is denied.

### IV.   CONCLUSION

For the reasons stated above, the Court rejects Defendants' argument that the joinder of Gore was fraudulent and should be ignored for the purposes of determining whether diversity jurisdiction exists. The Court will remand the matter to the Superior Court of New Jersey.

Date: **July 13, 2022**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
